Filed 11/30/15  P. v. Lopez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE RAYMOND LOPEZ,<br><br> Defendant and Appellant. | 2d Crim. No. B258504<br>(Super. Ct. No. KA103609)<br>(Los Angeles County) |

Lawrence Raymond Lopez appeals his conviction by jury of two counts of corporal injury to a cohabitant (counts 1 & 3; Pen. Code, § 273.5, subd. (a))[1] and assault with a deadly weapon (count 2; § 245, subd. (a)(1)).   On count 3 for corporal injury, the jury found that appellant personally used a knife within the meaning of section 12022, subdivision (b)(1).  In a bifurcated proceeding, the trial court found that appellant had three prior strike convictions (§§ 667, subds. (b) - (j); 1170.12), three prior serious felony convictions (§ 667, subd. (a)(1), and had served a prior prison term (§ 667.5, subd. (b)).  The trial court granted a *Romero* motion (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497) to strike two strike priors and sentenced appellant to 19 years state prison.  We affirm.

---

[1] All statutory references are to the Penal Code.

*Facts and Procedural History*

On Halloween day (October 31, 2013) appellant returned home drunk and argued with his girlfriend, Olivia C. Olivia was helping her nephew (Robert) and sister (Readine Gallegos) carve a pumpkin. She suggested that appellant not trick and treat with them. Enraged, appellant slammed Olivia against the refrigerator and choked her for about 15 seconds.

Gallegos called 911 as Olivia tried to leave in her truck. Appellant grabbed an eight-inch kitchen knife and said "you are not going to leave with the tires that I bought you." When Olivia tried to stop him, appellant lunged with the knife and cut her right thumb.

El Monte Police Officer David Garcia responded to the 911 call and spoke to Olivia. Olivia was crying and said that appellant shoved her against the refrigerator, causing her to hit her back and head, and choked her with both hands. When Olivia tried to leave, appellant threatened to slash her tires and lunged at her with the knife. Olivia had a lacerated right thumb, redness around the throat, and complained of head, neck, and back pain.

At trial, Olivia recanted and denied that she was choked or that appellant lunged at her with the knife. The jury, however, heard a recorded jailhouse phone call between appellant and Olivia. Appellant asked if Gallegos saw the "accident." Olivia replied "What accident?" and said that Gallegos "saw you in the house when you were arguing with me . . . and you choked me."

*Pitchess Motion*

Appellant contends that the trial court erred in denying his *Pitchess* motion for the discovery of Officer Garcia's personnel records. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.) We have reviewed the sealed transcript of the proceeding and conclude that the trial court did not abuse its discretion denying discovery. (*People v. Hughes* (2002) 27 Cal.4th 287, 330; *People v. Mooc* (2001) 26 Cal.4th 1216, 1232.)

2

*Prosecutor's Closing Argument: Traumatic Condition*

Appellant argues that the conviction on count 1 for corporal injury to a cohabitant (§ 273.5, subd. (a)) should be reduced to the lesser included offense of misdemeanor battery (§ 243, subd. (e)(1)) because the prosecution misstated the law on traumatic condition. Corporal injury to a cohabitant includes all the elements of battery and requires an injury resulting in a traumatic condition. (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952.) On counts 1 and 3, the jury was instructed that the prosecution had to prove that appellant inflicted an injury that resulted in a traumatic condition. (CALCRIM 840.) It was instructed that "traumatic condition" is "a wound or other bodily injury, whether minor or serious, caused by the direct application of physical force."

The prosecutor told the jury there were two corporal injury counts: the "initial choking incident" (count 1) and the knife incident (count 3). With respect to count 1, the prosecutor argued that the traumatic injury was established by the choking which caused redness around Olivia's neck, or in the alternative, by "the testimony about [Olivia] getting pushed up against the refrigerator." Olivia complained of "pain in the back of the head, neck area, and her back. That's sufficient as well. So you can choose. But the thing is, you have to unanimously decide on either one of the acts."[2]

Appellant argues that subjective pain is not a traumatic condition and that the conviction cannot stand where the prosecution argues guilt based upon alternative theories, one of which is contrary to the law. (See *People v. Singleton* (1987) 196 Cal.App.3d 488, 494.) But in *Singleton* the trial court gave an erroneous aiding and abetting instruction and "the dialogue between the court and the jurors shows that the conviction was almost certainly based upon the impermissible theory." (*Ibid.*) The cases

---

[2] The jury was given a CALCRIM 3500 unanimity instruction on count 1 which stated: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

cited by appellant (*People v. Singleton, supra,* 196 Cal.App.3d at pp. 493-494*; People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1131, and *People v. Green* (1980) 27 Cal.3d 1, 64-68) all involve cases in which the jury was misinstructed.  Here, the jury was correctly instructed on the elements of corporal injury resulting in a traumatic condition. (CALCRIM 840.)

Appellant's challenge to the prosecutor's remarks go to the issue of prosecutorial misconduct rather than instructional error.  (*People v. Morales* (2001) 25 Cal.4th 34, 43.)  "When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection.  Otherwise no claim is preserved for appeal.  [Citation.]" (*Ibid.*)  To preserve a claim of prosecutorial misconduct, the defendant must make a timely and specific objection and ask the trial court to admonish the jury.  (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305.)  Appellant did not object and forfeited the alleged error.

On the merits, we conclude there was no misstatement of the law and that appellant's reliance on *People v. Abrego* (1993) 21 Cal.App.4th 133 is misplaced.  In *Abrego,* the victim was slapped in the head five times but not injured and did not complain of pain or tenderness.  The investigating officer observed no injury and the victim testified that she was not bruised or injured.  (*Id.*, at pp. 135-136.)  The Court of Appeal concluded that pain, absent an injury, does not establish a traumatic condition. (*Id.*, at pp. 137-138.)

In many domestic violence cases, the traumatic condition is established by the victim's bruises (e.g., *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085-1086) or redness (e.g, *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771).  Section 273.5, subdivision (d) provides that a traumatic condition "means a condition of the body, such as a wound, or external or *internal injury* including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by physical force. . . ."  (Italics added.)  Pushing and choking a victim can result in an internal injury,

4

resulting traumatic condition manifested by a concussion, head, neck or back pain, or a sore throat.

*Abrego* is a sufficiency of the evidence case and factually distinguishable. Unlike *Abrego,* Olivia told the investigating officer that she was injured when appellant slammed her against the refrigerator and choked her. The prosecutor did not misstate the law in arguing that the jury could infer a traumatic condition based on evidence that Olivia experienced pain to her neck and back, or in the alternative, redness to the neck. "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of-comments in an improper or erroneous manner." (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

Appellant makes no showing that the prosecutor's comments denied him a fair trial or that it is reasonably probable that appellant would have received a more favorable result absent the alleged misconduct. (*People v. Crew* (2003) 31 Cal.4th 822, 839.) The jury was instructed on corporal injury resulting in traumatic condition (CALCRIM 840)[3] and battery (CALCRIM 841), and that battery "does not have to cause pain or injury of any kind." The trial court instructed that "if you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM 200.) It is presumed that the jury understood and followed the instructions. (*Weeks v. Angelone* (2000) 528 U.S. 225, 234 [145 L.Ed.2d 727, 737-738]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 83.)

*Ineffective Assistance of Counsel*

Appellant claims that he was denied effective assistance of trial counsel because his attorney did not object to the prosecutor's remarks on traumatic condition.

---

[3] The CALCRIM 840 instruction stated in pertinent part: "A traumatic condition is the result of an injury if: [¶] 1. The traumatic condition was the natural and probable consequence of the injury; [¶] 2, The injury was a direct and substantial factor in causing the condition; [¶] AND [¶] 3. The condition would not have happened without the injury."

As we have concluded, the prosecutor did not misstate the law, and the contention necessarily fails. (See e.g., *People v. Najera* (2006) 138 Cal.App.4th 212, 225 [no ineffective counsel for failing to request instruction that was not supported by the evidence].) The Sixth Amendment does not require trial counsel to make futile or frivolous objections. (*People v. Osband* (1996) 13 Cal.4th 622, 678; *People v. Price* (1991) 1 Cal.4th 324, 387.)

To prevail on a claim of ineffective assistance of counsel, appellant must show both deficient performance and resulting prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693]; *People v. Weaver* (2001) 26 Cal.4th 876, 961.) With respect to the first prong, defense counsel may have believed there was nothing improper about the prosecutor's argument or that an objection would have prompted the prosecution to emphasize that Olivia suffered redness to neck. A reviewing court will reverse on ineffective assistance of counsel grounds only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission. (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.) The *Strickland* prejudice prong is not satisfied because appellant shoved and choked Olivia, causing her to suffer a traumatic injury. Appellant makes no showing that it is reasonably probable a more favorable result would have occurred absent counsel's failings. (*People v. Mayfield* (1993) 5 Cal.4th 142, 175.)

*Jury Question on Legal Definition of Injury*

Appellant argues that the trial court erred in responding to a jury question on the legal definition of injury. During deliberations, the jury submitted the following question: "Does short term pain, whether major or minor, to the back and/or the head as a result of the circumstances, constitute an injury? Is there a legal definition of an injury?" The trial court conferred with counsel and addressed the jury as follows: "Is there a legal definition of injury? [¶] Well, and this is an issue that jurors struggle with, but the only thing that I can tell you is that answer is in the jury instruction for count 1 and the lesser included offense. . . . It is defined in that instruction. That's what the definition is. And you have to work with that definition. Okay?"

6

A trial court has no duty to elaborate on standard instructions despite a jury request for clarification. (*People v. Davis* (1995) 10 Cal.4th 463, 522.) Here, the instructions were full and complete. Appellant did not object to the trial court's response or request a clarifying instruction, thereby forfeiting the alleged error. (*People v. Roldan* (2005) 35 Cal.4th 646, 728-729; *People v. Cooper* (1991) 53 Cal.3d 771, 847.) On the merits, appellant makes no showing that he was prejudiced. (See e.g., *People v. Solis* (2001) 90 Cal.App.4th 1002, 1016.)

Appellant argues that the trial court should have given CALCRIM 926 which defines "injury" for purposes of felony battery and states that the injury must require professional medical treatment. (§243, subd. (f)(5).) That type of injury is not required for corporal injury on a cohabitant which encompasses minor internal injuries. (*People v. Gutierrez, supra,* 171 Cal.App.3d at p. 952.) The Legislature, in enacting section 273.5, "has clothed persons of the opposite sex in intimate relationships with greater protection by requiring less harm to be inflicted before the offense is committed." (*Ibid.*)

Appellant argues that the Dictionary.com internet definition of "injury" broadly defines injury as something that causes harm of any kind including emotional or psychological harm. But section 273.5, subdivision (d), is limited to bodily injury. In the absence of a specific request, the trial court is not required to clarify or amplify on words that have a commonly understood meaning and are not used in a technical or legal sense. (*People v. Navarette* (2003) 30 Cal.4th 458, 503.) Appellant makes no showing that it is reasonably probable that he would have obtained a more favorable result had the jury been instructed on the legal definition of injury. (*People v. Breverman* (1998) 19 Cal.4th 142, 178.)

*Refusal to Instruct on Accident or Misfortune*

Appellant argues that the trial court erred in denying his request to instruct on accident or misfortune. (§ 26; CALCRIM 3404.) The defense of accident or misfortune "amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime. [Citations.]" (*People v. Lara* (1996) 44

7

Cal.App.4th 102, 110.)  A trial court is not required to give a pinpoint instruction that is argumentative or not supported by substantial evidence.  (*People v. Bolden* (2002) 29 Cal.4th 515, 558.)  Here the court concluded there was no substantial evidence to give CALCRIM 3404 because the People's case was based on two possible scenarios:  that appellant purposefully stabbed Olivia or that appellant tried to puncture the tire and cut Olivia.  Under either scenario, appellant did not accidentally wield the knife.  Because assault with a deadly weapon is a general intent crime, appellant did not have to intend to cut or injure Olivia.  (See *People v. Colantuono* (1994) 7 Cal.4th 206, 214-215.)

The defense of accident is available only when the alleged crime was the result of an event that happened while the defendant engaged in a lawful act.  (*People v. Gorgol* (1953) 122 Cal.App.2d 281, 308.)  Appellant brandished the knife and threatened to puncture the tire.  It was a criminal act and precludes an instruction on accident or misfortune.

In order to convict on assault, the prosecution had to prove that appellant "willfully committed an act that by its nature will probably and directly result in injury to another. . . ."  (*People v. Colantuono, supra,* 7 Cal.4th at p. 214.)  Appellant grabbed the knife and lunged in a manner that was highly likely to injure Olivia.  Even without an accident instruction, appellant was free to argue that the stabbing was accidental.[4]  (See e.g., *People v. Corning* (1983) 146 Cal.App.3d 83, 88-89 [failure to instruct on accident harmless; defense counsel argued that shooting was accidental].)  In finding that the assault was willful, the jury necessarily rejected the claim that the stabbing was accidental.  (See *People v. Jones* (1991) 234 Cal.App.3d 1303, 1313-1316, disapproved on other grounds in *People v. Anderson* (2011) 51 Cal.4th 989, 998, fn. 3.)  In view of the overwhelming evidence of  guilt, the alleged error in not instructing on accident or misfortune was harmless under any standard of review.  (*Chapman v. California*  (1967)

---

[4] In opening statement, defense counsel argued that it was an "accident."  At trial, Olivia testified "It was an accident.  It was my fault."  In a  jailhouse phone call, appellant told Olivia it was an "accident"   and "as long as you don't go to court[,] I should beat the case."

8

386 U.S. 18, 22-24 [harmless beyond reasonable doubt standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [reasonable probability of a more favorable result standard].)

*Conclusion*

Appellant's remaining arguments have been considered but merit no further discussion.  The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

John C. Dominguez, Judge

Superior Court County of Los Angeles

_____


Marc S. Devore, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.