Filed 8/28/24  P. v. Witous CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084022 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF2000177) |
| JESSICA MARIE WITOUS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Samuel Diaz, Jr., Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Brendon Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

The trial court sentenced Jessica Marie Witous to nine years in state prison after a jury found her guilty of felony child abuse. (Pen. Code[1], §§ 273a, subd. (a), 12022.7, subd. (d).) Witous claims the prosecutor misstated the law and improperly attempted to diminish the People's burden of proof. Witous also asks us to independently conduct a *Pitchess*[2] review to which the People do not object.

We conclude there was no prosecutorial error or abuse of discretion by the trial court. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In late October 2019, 18-month-old Z. began attending an in-home daycare facility run by Witous. On Friday, November 8, 2019, Z. came home with a bruise under her lip after spending the day at Witous's daycare program. Later that night Z. began vomiting. On Monday, November 11, Z. came home from Witous's daycare with a "busted lip" and an abrasion above her left eyebrow. On Tuesday, November 12, Witous called 911 and reported that Z. "jumped out" of the Pack 'n Play and was unresponsive. When Z.'s mother arrived at the hospital, she observed new abrasions above both of Z.'s eyebrows and bruising inside her right ear and on her right arm. A CT scan of Z.'s head revealed a subdural hematoma. Later that day, Z. underwent surgery to reduce pressure on her brain.

---

[1]    Unless otherwise indicated, statutory references are to the Penal Code.

[2]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[3]    We limit our discussion to the factual and procedural background relevant to the claim of prosecutorial error.

The following day, a child abuse pediatrician examined Z. and diagnosed her with abusive head trauma (a head injury that cannot be explained by accident or other medical causes). Z. remained in the hospital for 26 days, undergoing additional surgeries and relearning how to balance and walk.

The Office of the Riverside County District Attorney charged Witous with one count of felony child abuse in violation of section 273a, subdivision (a) and a sentencing enhancement allegation that Witous personally inflicted great bodily injury on a child under the age of five. (§ 12022.7, subd. (d).)

In April 2022, the trial court granted Witous's *Pitchess* motion and conducted an in camera review of the confidential personnel records of Detective William Guimont. The court made no disclosures.

On June 7, 2022, at the conclusion of a nine-day trial, a jury found Witous guilty of felony child abuse and found true the sentencing enhancement allegation. Witous was later sentenced to state prison for a total term of nine years.

Witous filed a timely appeal.

DISCUSSION

Witous seeks reversal of her conviction based on alleged prosecutorial misconduct.[4] She claims that during closing argument the prosecutor improperly attempted to diminish the People's burden of proof by misstating

---

4    Witous uses the term "prosecutorial misconduct," which " 'is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667 (*Centeno*).) " 'A more apt description of the transgression is prosecutorial error' " (*id.* at p. 667), and we therefore use the term "prosecutorial error."

the law.  As we explain, Witous forfeited the issue, and we find no prosecutorial error.

A.    *Forfeiture*

To preserve a claim of prosecutorial error for appeal, " 'a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety.' " (*People v. Clark* (2011) 52 Cal.4th 856, 960.)  "The failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm." (*Ibid.*)  However, "[a] prosecutor's misstatements of law are generally curable by an admonition from the court." (*Centeno, supra*, 60 Cal.4th at p. 674.)

Nothing in the record indicates an objection or request for an admonition would have been futile.  Witous's claim of prosecutorial error was therefore forfeited.  Even assuming she had preserved the issue for appeal, the challenged statements do not constitute prosecutorial error.[5]

B.    *No Prosecutorial Error*

"[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements." (*People v. Marshall* (1996) 13 Cal.4th 799, 831.)  Although a showing of bad faith by the prosecutor is not required (*People v. Hill* (1998) 17 Cal.4th 800, 822), Witous "must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood

---

[5]    Witous contends defense counsel's failure to object would constitute ineffective assistance of counsel and asks this court to exercise its discretion to address her substantive claim.  Because we find no prosecutorial error, we do not address these additional arguments.

or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno, supra*, 60 Cal.4th at p. 667.) If, when viewed in context, the prosecutor's challenged comments " 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.) Applying these principles, we find no prosecutorial error.

Prior to closing arguments, the trial court pre-instructed the jury and specifically advised: "You must follow the law as I explain it to you . . . . [¶] If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." The trial court also explained general intent with CALCRIM No. 250, saying "[a] person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do a required act." After the attorneys completed their closing arguments, the trial court read to jurors, among other instructions, CALCRIM No. 821 which explained that Witous needed to "willfully inflict[ ] unjustifiable physical pain or mental suffering on a child," and that "willfully" meant an act was done "willingly or on purpose."

Witous extracts the following statements from the first half of the prosecutor's closing argument as the basis for the prosecutorial error claim: "For child abuse, it's different. It is a general intent crime. You do not have to intend to harm the child. You don't have to intend to inflict any injuries. You don't have to have any intent at all."

When placed back in context we find the prosecutor's comments were not error; they were made while explaining the difference between general and specific intent crimes. (See *People v. Moore* (2018) 19 Cal.App.5th 889,

5

893 ["General intent crimes require only a general criminal intent to commit the proscribed act, while specific intent crimes require an additional intent to do some further act or achieve some further consequence . . . ."].) As the prosecutor observed, "[Witous] didn't need to have been thinking in her mind, I want to hurt this child [or] I want this child to be injured. All that needs to happen is the actions need to be willful." (See *People v. Thurston* (1999) 71 Cal.App.4th 1050, 1053 [" 'As a general rule, a statute proscribing willful behavior is a general intent offense. . . . The only intent required for a general intent offense is the purpose or willingness to do the act or omission.' "].)

Contrary to Witous's arguments on appeal, the prosecutor did not improperly attempt to diminish the People's burden of proof. Considering the prosecutor's entire closing argument, there is no reasonable likelihood the jury would have understood the prosecutor's remarks otherwise. (See *Centeno, supra*, 60 Cal.4th at p. 667.) Furthermore, the trial court's verbal and written instructions to the jury buttress our conclusion. We find no prosecutorial error.

C.    *Pitchess Review*

At the request of Witous, and with no objection by the People, we independently reviewed both the sealed reporter's transcript of the trial court's in camera *Pitchess* proceeding, as well as the sealed documents provided to the Superior Court of Riverside County by the Riverside County Sheriff's Department. We are satisfied that the court did not abuse its discretion by concluding there was no information to disclose. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228.)

6

## DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.