Filed 2/27/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063090 |
| v. | (Super. Ct. No. BAF2001524) |
| ROYCE LANELE ROBINSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Samuel Diaz, Jr., Judge. Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

The prosecution charged Royce Lanele Robinson with committing domestic violence and other related crimes against his girlfriend Jane Doe on or about three separate dates. During a jury trial, the prosecution introduced evidence of a prior domestic violence conviction (involving a different victim) in order to show Robinson had a propensity to commit such crimes. (See Evid. Code, § 1109.)[1] The jury ultimately found Robinson guilty of committing two crimes against Doe: domestic violence with great bodily injury, and spousal battery (as a lesser included offense).

On appeal, Robinson claims the trial court erred by allowing the prosecution to introduce his prior domestic violence conviction without a showing of the underlying facts. But Robinson's claim has been forfeited on appeal because he did not raise this argument in the trial court. In any event, we find the court did not abuse its discretion by admitting the section 1109 evidence. Further, even if we were to find an error, we would not find the error to be prejudicial. Thus, we affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

On November 17, 2020, at about 10:30 p.m., Robinson was driving his car in Hemet and Doe was in the front passenger seat. As Robinson approached a stop sign, he pushed Doe out of the passenger side door and then sped away squealing his tires. Doe landed headfirst on the side of the road. A woman saw what happened, pulled over her car, and drove Doe to a nearby gas station. The woman observed Doe had a black eye, marks on her neck, and cuts on her arms. Doe told the woman that Robinson had hit her, strangled her, and "she was scared he was going to come back looking for her."

Police arrived and spoke to Doe, who described her relationship with Robinson as "friends with benefits." Doe said she and Robinson had been at a casino

---

[1] Further undesignated statutory references are to the Evidence Code.

where they had an argument. Doe said the argument continued in the car, where Robinson had punched her in the face, strangled her, and bit her. Doe said that at one point she told Robinson she wanted to get out of the car, and she opened the passenger door. Doe said that as the car was slowly moving Robinson pushed her out. Doe later gave a similar account to a forensic nurse.

On January 11, 2021, police went to a Hemet hospital to investigate a domestic violence report. Doe said that about five days prior she and Robinson had gotten into an argument. Doe said, "She was laying on her back on [Robinson's] bed and he took his hand . . . and pushed down on her chest." Doe said, "She heard a pop or a crack." Doe was in pain and could not breathe. Doe said the day before Robinson did the same thing to her, so she went to the hospital for chest x-rays, and she had returned this day to get the results. The x-rays showed Doe had a fractured sternum.

On February 4, 2021, at a Riverside hospital, Doe reported to police that on the prior day Robinson had kept her in his bedroom for about eight hours, and during that time he repeatedly physically and sexually assaulted her.

*Court Proceedings*

The prosecution filed a seven-count information. Count one (November 17, 2020), and count two (January 10, 2021), alleged Robinson inflicted a corporal injury upon Doe resulting in a traumatic condition. (Pen. Code, § 273.5.) Counts three through seven (February 4, 2021), alleged the following crimes: inflicting a corporal injury (Pen. Code, § 273.5); rape by force (Pen. Code, § 261, subd. (a)(2)); sexual penetration by force (Pen. Code, § 289, subd. (a)(1)(A)); false imprisonment (Pen. Code, § 236); and sexual penetration by force (Pen. Code, § 289, subd. (a)(1)(A)). As to counts one through three, the information alleged great bodily injury enhancements. (Pen. Code, § 12022.7, subd. (e).) The information further alleged Robinson had two prior "strike" convictions. (Pen. Code, §§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A).)

3

In a pretrial motion, the trial court admitted into evidence the record of a 2017 Penal Code section 273.5 misdemeanor conviction Robinson had sustained (the hearing will be covered in detail in the discussion section of this opinion).

As to count one, Doe testified at trial that she jumped out of Robinson's car and "scraped myself and hit myself in the face with the pavement." As to count two, Doe said she did not remember anything related to the injury to her chest. As to counts three through seven, Doe testified that she lied to the police about what Robinson had done to her and she inflicted the injuries upon herself. As to all the counts, police officers and other witnesses generally testified as to Doe's prior inconsistent statements.

In the defense case, Robinson's mother testified Doe had lived with her and her son for a period of time. Ms. Robinson said that on one occasion her son was yelling for her to come into his bedroom because Doe was choking on something. Ms. Robinson said she entered the bedroom and saw her son "trying to give [Doe] the Heimlich." Ms. Robinson said her son told her to call 911, but Doe "stopped me and said, It's okay."

As to pushing Doe out of his car (count one), the jury found Robinson guilty of misdemeanor spousal battery (as a lesser included offense). (Pen. Code, § 243, subd. (e).) As to inflicting Doe's chest injury (count two), the jury found Robinson guilty as charged and found true the great bodily injury enhancement. (Pen. Code, §§ 273.5, 12022.7, subd. (e).) As to the remaining charges (counts three through seven), the jury found Robinson not guilty. The trial court struck one strike prior and imposed a sentence of 13 years and 364 days in state prison.

II

DISCUSSION

On appeal, Robinson contends the trial court abused its discretion by allowing the prosecution to introduce into evidence the record of his prior domestic violence conviction under section 1109. We disagree.

4

We review a trial court's decision to admit evidence under section 1109 for an abuse of discretion. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.) "'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)

In this part of the discussion, we shall: A) state relevant legal principles; B) summarize the trial court proceedings regarding the prosecution's motion to introduce section 1109 evidence; and C) analyze the law as applied to the facts.

*A. Relevant Legal Principles*

Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of *specific instances of his or her conduct*) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a), italics added.)

However, when a "defendant is accused of a sexual offense, evidence of the defendant's commission of *another sexual offense or offenses* is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a), italics added.) Similarly, when a "defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of *other domestic violence* is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1), italics added.)

Section 1108 and section 1109 reflect the Legislature's determination that in sexual offense cases and domestic violence cases, "similar prior offenses are uniquely probative of a defendant's guilt on a later occasion." (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192; see also *People v. Abilez* (2007) 41 Cal.4th 472, 502 ["'section

5

1108 implicitly abrogates prior decisions of this court indicating that "propensity" evidence is per se unduly prejudicial to the defense'"].)

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of *undue prejudice*, of confusing the issues, or of misleading the jury." (§ 352, italics added.) "'The prejudice which . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.'" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

Section 1109 and section 352 require a trial court to balance """"the probative value of the evidence . . . against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses."' [Citation.] "'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.""" (*People v. Thomas* (2021) 63 Cal.App.5th 612, 630.)

An appellate court will "normally review a trial court's evidentiary ruling based on the facts known to the trial court at the time of the ruling." (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1161.) A trial court "'need not expressly weigh prejudice against probative value . . . or even expressly state that [it] has done so.'" (*People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6; see also *People v. Johnson* (1987) 193 Cal.App.3d 1570, 1573–1577 ["the argument that preceded the court's ruling, and the nature of the ruling itself, adequately demonstrates a reflection and weighing of . . . section 352 factors"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1187–1188 ["'The record as a whole shows the court was well aware of, and consistently performed, its duty . . . to balance the probative value of evidence against any prejudicial effect'"].)

*B. Trial Court Proceedings*

Prior to the start of the jury trial, the prosecution filed a motion in limine summarizing the anticipated evidence supporting the seven alleged crimes. The prosecution also disclosed: "The defendant has a prior Penal Code section 273.5 conviction for March 30, 2017, out of Kern County. The People seek to admit evidence of this conviction for purposes of Evidence Code section 1109 through a certified conviction pursuant to Evidence Code section 452. 5." [2]

The motion in limine cited an opinion holding that prosecutors can "prove up" prior sex offenses under section 1108 through certified court documents instead of requiring the prosecution to put on live testimony. (See *People v. Wesson* (2006) 138 Cal.App.4th 959, 968 (*Wesson*) ["section 1108 does not limit the prosecution to the disclosure of potential live testimony"].) The prosecution argued that the rationale in *Wesson* applies equally to prior domestic violence crimes under section 1109.

At the hearing on the motion, the trial court asked the prosecutor, "As to the prior 1109, are you going to bring in the actual victim?" The prosecutor responded, "I would submit the certified conviction under 452.5 and People versus Wesson, which says the prosecution may give [live] testimony or admit the certified conviction . . . . I do have a copy of [Wesson] for the court and counsel, if the Court would like." The prosecutor said the certified conviction identifies "Penal Code Section [273.5] and corporal injury on his spouse."

The prosecutor continued: "1109 specifically says [the jury] can consider prior acts by the defendant. What Wesson talks about is a certified conviction can serve to show prior acts, operations, or decisions by the defendant." The trial court responded:

---

[2] "An official record of conviction . . . or an electronically digitized copy thereof, is admissible . . . to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record." (§ 452.5, subd. (b)(1).)

7

"I'll take a look at this case. Usually the typical safe way of introducing 1109 evidence is through live testimony of prior victims under oath."

After a break, Robinson's counsel argued, "I didn't get a chance to actually read Wesson until lunch, and see it is a case involving . . . sexual allegations . . . . It comes under 1108 of the Evidence Code. I've just gotten a chance to go over it. I see there might be an analogy." Counsel said, "I suppose the same opinion could have been written about an 1109 analysis, but it wasn't, and so we here relying on 1108 for what is really a 1109. We would object on those grounds."

The trial court ruled that it would admit the prosecution's proffered evidence under section 1109. The court explained its ruling as follows: "I did take a look at [Wesson]. It was booked on 1108 evidence. It's the same analysis, it's a 352 also analysis according to Wesson. I note your objection. It does deal with evidence. It deals with writing. It does come in. Obviously, it [goes] to weight because obviously usually an 1109 type of evidence is powerful evidence usually comes in by live witnesses instead of a piece of paper. That goes to weight versus admissibility. At this time, I did notice the difference, but it's the same type of analysis."

At the conclusion of the prosecution's case, the trial court admitted into evidence Robinson's 2017 certified record of conviction for a misdemeanor violation of Penal Code section 273.5 (the record includes various documents, but the documents do not disclose the factual basis of Robinson's plea).

The trial court instructed the jury: "The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically: a prior conviction for Penal Code section 273. 5 from March 30, 2017." (CALCRIM No. 852A.) The court further instructed the jury: "It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge and allegation beyond a reasonable doubt." (CALCRIM No. 852B.)

During closing argument, the prosecutor said: "There's something else,

8

something you can consider with Counts 1 through 3. And that's what we call 1109 evidence." The prosecutor argued: "And you can use that when considering whether or not the defendant is disposed to commit domestic violence in this case. And you know 1109 evidence is a bit different. Typically in the law, we don't allow you to say once a thief, always a thief because that's not how we judge people. But with domestic violence and sex crimes, the law carves out a niche and it allows you to consider that."

*C. Application and Analysis*

In *Wesson*, a defendant was convicted of sodomy by force and related crimes. (*Wesson*, *supra*, 138 Cal.App.4th at p. 961.) The trial court had allowed the prosecution to introduce defendant's prior sex offense convictions (forcible oral copulation and sexual battery) under section 1108 through documentary evidence as opposed to live testimony. (*Wesson*, at p. 965.) The Court of Appeal agreed with the trial court's ruling, finding "'section 452.5 states a new hearsay exception for certified official records of conviction, which may be offered to prove not only the fact of a conviction, but the commission of the underlying offense.'" (*Id.* at p. 968.)

In *Wesson*, defendant argued "the jury can only make its determination as to a defendant's propensity to commit the charged offense if the prosecution produces the testimony of witnesses regarding the details of the prior conduct." (*Wesson*, *supra*, 138 Cal.App.4th at p. 969.) Defendant asserted "there were significant differences between the two incidents" because "the prior incident involved forcible oral copulation and sexual battery against a stranger while the charged offenses were forcible sexual penetration and sodomy against his girlfriend." (*Ibid.*) The Court of Appeal rejected defendant's arguments: "First, the trial court considered the issue of similarity in its analysis under section 352. We agree with its conclusion that both the prior and charged offenses involved forcible sexual offenses against adult women, and thus the prior offenses were probative as to defendant's propensity to commit the charged offenses.

9

Second, had defendant wanted to emphasize that the prior offenses were dissimilar because they involved a stranger, he was free to subpoena [the victim of the prior offenses] to present such evidence." (*Ibid*.)

In this case, we agree with the trial court's section 1109 ruling. That is, as far as admitting nontestimonial evidence under section 1108 or section 1109, the analysis is essentially the same. In both cases, the Evidence Code allows the prosecution to introduce documentary *evidence* "'to prove not only the fact of a conviction, but the commission of the underlying offense.'" (See *Wesson*, *supra*, 138 Cal.App.4th at p. 968.)

"In a criminal action in which the defendant is accused of a sexual offense, *evidence* of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a), italics added.)

"Except as provided . . . , in a criminal action in which the defendant is accused of an offense involving domestic violence, *evidence* of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a), italics added.)

"'Evidence' means testimony, *writings*, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (§ 140, italics added.) Just as in *Wesson*, the documents supporting Robinson's 2017 certified record of conviction for domestic violence "are 'writings,' and thus fall within the statutory definition of evidence." (*Wesson*, *supra*, 138 Cal.App.4th at p. 967.)

As astutely pointed out by Certified Law Student Grace McLeod, who capably represented the Attorney General's Office during oral argument, the Legislature in both section 1108 and section 1109 used the broader word "evidence" rather than the narrower word "testimony." Thus, we hold that a trial court does not abuse its discretion when it permits the prosecution to introduce evidence of a prior domestic violence conviction under section 1109 through a certified record of conviction, rather than

10

through live testimony by the alleged victim.[3]

For the first time on appeal, Robinson argues: "While the record shows that the trial court knew that both Evidence Code section 1108 and 1109, required the same Evidence Code section 352 balancing test, there is no showing that the trial court actually engaged in the weighing process required, nor does the record support a finding that the trial court did engage in that weighing process. Frankly, the record is completely devoid of any showing that the 2017, misdemeanor conviction [(Pen. Code, § 273.5)], bore any similarity-in any way-to the facts and circumstances surrounding the three domestic violence charges in this case."

We reject Robinson's belated argument for three reasons: (1) it has been forfeited for purpose of appeal; (2) in any event, it fails on its merits; and (3) even if we were to find an evidentiary error, we would not find the error to be prejudicial.

### 1. *Robinson's argument has been forfeited for purposes of appeal.*

An evidentiary objection made on one ground in a trial court does not preserve a challenge based upon a different ground in an appellate court. (*People v. Partida* (2005) 37 Cal.4th 428, 434–435.) In a criminal trial, "a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."' [Citation.] 'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.'" (*Id*. at p. 434.)

---

[3] As this appears to be a matter of first impression, we are ordering publication of this opinion. (See Cal. Rules of Court, rule 8.1105(c)(4).)

11

"What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling. If the court overrules the objection, the objecting party may argue on appeal that the evidence should have been excluded for the reason asserted at trial, but it may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial. A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida*, *supra*, 37 Cal.4th at p. 435.)

Here, Robinson objected at trial to the prosecution's proffered section 1109 evidence only on the grounds that it needed to be proven through live testimony, rather than through documentary evidence. Robinson appeared to acknowledge that a certified record of conviction—by itself—is acceptable to "prove up" prior sex offenses under section 1108. (See *Wesson*, *supra*, 138 Cal.App.4th at p. 968.) But Robinson argued the holding in *Wesson* did not apply prior to domestic violence crimes under section 1109. The trial court appropriately overruled Robinson's objection and admitted the evidence.

Robinson now objects to the trial court's admission of his 2017 misdemeanor domestic violence conviction on entirely different grounds. Robinson argues that "the prosecution offered no facts that would suggest appellant engaged in similar behavior in 2017, as the behavior alleged to have been committed in this case." Therefore, according to Robinson, the court was unable to weigh the probative value of the evidence against its prejudicial effect under section 352.

We hold that under well-settled rules of appellate procedure, Robinson's new grounds for challenging the trial court's admission of the prosecution's proffered section 1109 evidence has been forfeited. Indeed, had Robinson objected on those same grounds in the trial court, the prosecution may have been able to provide additional underlying facts regarding the 2017 domestic violence conviction, and the court may

12

have been able to then engage in a more fulsome analysis under section 352. (See *People v. Partida*, *supra*, 37 Cal.4th at p. 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"].)

        *2. In any event, we find no error by the trial court.*

        "The court in its discretion may exclude evidence if its *probative value* is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352, italics added.)

        Generally, the least adjudicated elements of a Penal Code section 273.5 conviction are: willful infliction of corporal injury resulting in a traumatic condition upon a victim with whom the person has a dating relationship (e.g., a current or former spouse, a current or former cohabitant). (*People v. Thurston* (1999) 71 Cal.App.4th 1050,1052–1056.) "The term 'corporal injury' is unambiguous and means bodily injury." (*People v. Serrano* (2022) 77 Cal.App.5th 902, 919.) For purposes of Penal Code section 273.5, a "traumatic condition" is defined as "'a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force.'" (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 771.)

        Here, when analyzing the prosecution's proffered section 1109 evidence (Robinson's 2017 misdemeanor Penal Code section 273.5 conviction), the trial court stated: "It's the same analysis, it's a 352 also analysis according to Wesson." (See *Wesson*, *supra*, 138 Cal.App.4th at p. 968.) Although the court did not go on to then articulate its analysis more fully under section 352, we must presume—in the absence of evidence to the contrary—that the court considered all the relevant criteria and knew and applied the correct statutory and case law. (See *Rancho Viejo v. Tres Amigos Viejos* (2002) 100 Cal.App.4th 550, 558 ["We affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons"].)

13

Before the trial, the prosecution made the trial court aware of the anticipated evidence in the instant case. As to the 2017 domestic violence conviction, the court was made aware the victim was Robinson's spouse. And the court was presumably aware of the least adjudicated elements of a Penal Code section 273.5 conviction. That is, the court knew that as far as the prior conviction, Robinson had inflicted a corporal injury on his spouse resulting in a traumatic condition. In short, the proffered evidence established that the prior uncharged offense and the instant charged offenses involved assaultive conduct against adult women with whom Robison had a romantic relationship, and therefore the prior conviction was "probative as to defendant's propensity to commit the charged offenses." (See *Wesson*, *supra*, 138 Cal.App.4th at p. 969.)

Moreover, the trial court was well within its discretion to find that the probative value of the proffered section 1109 evidence—which was to be admitted through documentary evidence rather than more time consuming live witness testimony—was *not* "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Indeed, the court appeared to allude to the section 352 balancing test when it spoke to the "weight" of the section 1109 evidence, as opposed to its admissibility.

Thus, we find the trial court did not abuse its discretion when it admitted Robinson's 2017 misdemeanor domestic violence conviction into evidence under the provisions of section 1109. Additionally, had Robinson wanted to establish that the uncharged 2017 domestic violence offense was factually dissimilar to the instant charged domestic violence offenses, he certainly had the opportunity "to present such evidence." (See *Wesson*, *supra*, 138 Cal.App.4th at p. 969.)

14

*3. Even if we were to find error, we would not find it to be prejudicial.*

If an appellant establishes an evidentiary error under section 1109 (or section 352), the judgment may be overturned only if it is further established "that it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)

We find that Robinson has not met this burden. As far as the first incident (count one), an independent witness testified that she saw Doe being pushed out of Robinson's car while it was moving. As far as the second incident (count two), Ms. Robinson's testimony about witnessing Robinson administering a Heimlich maneuver was in direct contradiction to Doe's initial statements to the police about how her chest injuries were intentionally inflicted by Robinson. Moreover, the x-rays documenting the severity of Doe's injuries provided compelling persuasive corroborating evidence.

We further tend to agree with the Attorney General's argument that: "There is no reason to believe the jury was swayed by the 1109 evidence as to count two only, while simultaneously acquitting [Robinson] of counts three through seven and only convicting him of the lesser-included offense as to count one."

In sum, we find the jurors were able to consider the section 1109 evidence for its limited purpose—as they were instructed to do—and their split verdicts further tend to demonstrate that it is not reasonably probable that a result more favorable to Robinson would have been reached in the absence of the section 1109 evidence.

## III

## DISPOSITION

The judgment is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.